UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| 98 STARR ROAD OPERATING CO., LLC d/b/a ELDERWOOD AT BURLINGTON, | ) ) ) |
| Defendant. | ) ) ) |

Civ. Action No. 2:22-cv-00168-cr

**PLAINTIFF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH PORTIONS
OF DEFENDANT'S THIRD-PARTY SUBPOENAS AND FOR A PROTECTIVE ORDER**

Pursuant to Federal Rules of Civil Procedure 26(b)-(c) and 45(d), the United States Equal Employment Opportunity Commission ("EEOC") moves to quash portions of third-party subpoenas issued by Defendant 98 Starr Road Operating Co., LLC d/b/a Elderwood at Burlington ("Elderwood" or "Defendant") to non-parties the Vermont Attorney General, Civil Division ("Vermont AG"); Prime Time Healthcare, LLC ("Prime Time"); and Favorite Healthcare Staffing, Inc. ("Favorite") and for a protective order limiting the Defendant's overbroad requests for documents irrelevant to the claims and defenses asserted in this case. The EEOC also requests that this Court stay compliance with the pending subpoenas until it has had the opportunity to consider this motion.

Significant portions of Defendant's three subpoenas must be quashed. Defendant's subpoena on the Vermont AG, *see* Ex. 4 (Vermont AG subpoena), seeks information already provided to it by the EEOC and attempts an end-run around the EEOC's proper withholding of privileged documents protected by the government deliberative process privilege and common interest doctrine. In addition, Defendant already has the information it purports to further uncover—why the Vermont AG transferred the investigation of certain charges to the EEOC—and any additional information it hopes to recover regarding how the investigations proceeded is irrelevant to this de novo proceeding. Defendant's subpoenas on the Aggrieved Individuals' staffing agencies, Prime Time and Favorite, *see* Exs. 6 (Prime Time subpoena) and 5 (Favorite subpoena), also suffer from numerous infirmities. They seek protected, private information regarding the Aggrieved Individuals' employment before and after their time at Elderwood that is irrelevant to the claims and defenses asserted in this lawsuit. What is more, several of Defendant's requests in the Prime Time and Favorite subpoenas are facially overbroad and, at times, appear to serve no other purpose than attempting to embarrass, harass, or damage the

Aggrieved Individuals. The EEOC therefore asks this Court to: (1) quash those portions of the Vermont AG subpoena seeking duplicative, privileged, and irrelevant information (Vermont AG Request ("Req.") Nos. 1, 2, 4, 5); (2) quash those portions of the Prime Time and Favorite subpoenas seeking irrelevant, overbroad, and private information regarding the Aggrieved Individuals (Prime Time Req. Nos. 1, 3-6, 9-11, 13-16, 19-21, 23-26, 29-31, 33-36, 39-40; Favorite Req. Nos. 1, 3-6, 9-10); and (3) enter a protective order barring discovery into the same.

## I.    BACKGROUND

Felicia Ivy, Dian Murphy, Nicole Ferguson, Londia Bradstreet, Faith Robinson, and Papa Ndour (the "Aggrieved Individuals") filed charges of discrimination against Defendant, alleging they were subject to racial harassment and a racially hostile work environment at Elderwood. Pursuant to a worksharing agreement between the EEOC and the Vermont AG, the Vermont AG initially investigated three of the six charges with the EEOC investigating the rest. *See* Ex. 11 (EEOC_0000006, 499, 1350 (deferring investigation of Robinson, Bradstreet, and Ndour charges to the Vermont AG); EEOC_0002005, 3249, 4276 (deferring investigation of Ivy, Ferguson, and Murphy charges to the EEOC)); Declaration of Alison Bitterly at ¶ 18 (hereinafter "Bitterly Decl."). The Vermont AG later transferred all charges to the EEOC to avoid a potential conflict between Defendant and the Vermont AG that may—but had yet to—materialize in the investigations. *See* Ex. 12 (EEOC_0000124-125, 736-737, 1467-1468); Bitterly Decl. at ¶ 19.

After an investigation, issuance of cause determinations, and the failure of conciliation, on September 6, 2022, the EEOC commenced this action against Defendant, alleging that since at least March 2020, Elderwood subjected a class of Black employees to a racially hostile work environment in violation of Title VII. ECF No. 1 at ¶ 12. In particular, the EEOC alleges that Elderwood residents repeatedly referred to class members by racial slurs and epithets, made race-

based threats to Black employees, and assaulted Black employees while yelling racial slurs and epithets, *id.* at ¶ 12(b)–(f); that Elderwood was aware of the race-based conduct, *id.* at ¶ 12(g); and that Elderwood failed to take prompt, effective remedial action to prevent, stop, and remedy the racially hostile work environment, *id.* at ¶ 12(h)–(j). Defendant generally denies the EEOC's allegations and asserts that it took all reasonable steps to prevent and correct discrimination. ECF No. 39 at 3, 6. In addition, Defendant contends that the Aggrieved Individuals were not, and could not objectively be, offended by Elderwood's residents and that the Aggrieved Individuals "provoked certain behavior in Defendant's residents." *Id.* at 8.

In its Answer, Defendant raised four defenses relating to the pre-suit administrative process, asserting that the EEOC's claims were "barred, in whole or in part, by . . . estoppel, laches, waiver and/or unclean hands." ECF No. 7 at 5. The EEOC moved to strike these defenses because the focus of the defenses—the adequacy of EEOC investigations and cause determinations—is beyond judicial review, *see* ECF No. 26-1 at 6-7 (collecting cases), and yet Defendant intended to seek discovery on the quality and substance of the EEOC investigation, *see id.* at 12. On February 14, 2023, the Court granted the EEOC's motion and struck Defendant's estoppel, laches, waiver, and unclean hands defenses.[1] ECF No. 38.

At present, the Parties are engaged in discovery. With the Court having struck Defendant's defenses that take aim at the adequacy of EEOC investigations, the main issues in this case are what conduct the Aggrieved Individuals experienced at Elderwood, whether the Aggrieved Individuals were offended by the work environment at Elderwood, and the effectiveness of Defendant's response to harassment. And because the EEOC seeks only

---

[1] Defendant continues to improperly assert its laches defenses in its Amended Answer and tries to challenge the adequacy of EEOC's investigation even though it is beyond judicial review. *See* ECF No. 39 at 5.

3

compensatory damages, punitive damages, and injunctive relief in this case, no issues relating to backpay or front pay, such as mitigation, are present. *See* ECF No. 1 at 7-8.

On October 30, 2023, Defendant notified the Commission of its intent to serve subpoenas on the Vermont AG, Prime Time, and Favorite. *See* Ex. 10 at p. 13; Bitterly Decl. at ¶ 6. On November 6, 2023, the EEOC raised its objections to the three subpoenas, requested Defendant amend its third-party subpoena requests, and offered to meet and confer with Defendant to discuss the EEOC's objections. *See* Ex. 2; Bitterly Decl. at ¶ 8. Defendant responded to the EEOC on November 27, 2023, agreeing to slight revisions to the subpoenas, but largely refusing to accommodate the EEOC's requested amendments and declining to meet and confer. *See* Ex. 3; Bitterly Decl. at ¶ 9. The next morning, Defendant served the subpoenas. *See* Exs. 4-6; Ex. 10 at pp. 11-12; Bitterly Decl. at ¶ 10-12. On November 29, 2023, the EEOC asked Defendant to withdraw the subpoenas and again asked for a meet and confer. *See* Ex. 10 at pp. 10-11; Bitterly Decl. at ¶ 13. Defendant declined to withdraw its subpoenas, and the Parties' correspondence indicates that a further meet and confer would be futile.[2] *See* Ex. 10 at pp. 8-9; Bitterly Decl. at ¶ 13. Because the EEOC's attempts to resolve the Parties' disputes without judicial intervention have failed, it now brings those disputes before the Court.

## II.    LEGAL STANDARDS

Rule 45(d)(3) requires that a court quash or modify any subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[,] or . . . subjects a person to undue burden." A subpoena issued pursuant to Rule 45 also must meet Rule

---

[2] The deadline for the subpoenas is January 4, 2024. On December 18, 2023, Defendant's counsel stated it "received a response to [its] subpoena from Favorite Staffing, and are preparing those documents for production." *See* Ex. 10 at p. 2. The EEOC has not received a copy of the production.

26(b)(1)'s "'overriding relevance requirement' and may be quashed by [the] [c]ourt for [its] failure to do so." *Dowling v. New York-Presbyterian/Weill Cornell Med. Ctr.*, No. 19-CV-2114 (LJL), 2020 WL 1243780, at *2 (S.D.N.Y. Mar. 16, 2020) (citation omitted). Indeed, courts have the responsibility to ensure that Rule 45 subpoenas are not being used as "an end-run around the regular discovery process under Rules 26 and 34." *Lemoine v. Mossberg Corp.*, No. 3:18-CV-01270 (KAD), 2020 WL 3316119, at *1 (D. Conn. June 18, 2020) (citation omitted).

When faced with a motion to quash, the issuing party carries "the initial burden of demonstrating that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Malibu Media, LLC v. Doe*, No. 14-CV-4808 (JS)(SIL), 2016 WL 4574677, at *2 (E.D.N.Y. Sept. 1, 2016) (cleaned up). If the issuing party demonstrates relevance, the burden shifts to the party seeking to quash the subpoena to establish it is "overbroad, duplicative, or unduly burdensome." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) (citation omitted).

The Federal Rules of Civil Procedure also "'give district courts broad discretion to manage the manner in which discovery proceeds,' in particular through Rule 26(b)(2) that limits the scope of discovery, and Rule 26(c)(1)," which permits a court to issue protective orders. *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 WL 13444243, at *1 (D. Vt. Apr. 15, 2011) (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d. Cir. 2003)). Specifically, Rule 26(b)(2) provides that "[o]n motion or on its own, the court *must* limit the . . . extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." (emphasis added). And Rule 26(c)(1) permits the court to, "for good cause," issue a protective order forbidding discovery to shield a "person from annoyance, embarrassment, oppression, or

undue burden or expense." At the end of the day, "'district courts should not neglect their power to restrict discovery' under Fed. R. Civ. P. 26(c) and 'should not hesitate to exercise appropriate control over the discovery process.'" *Roth v. Cnty. of Nassau*, No. 15CV6358LDWAYS, 2017 WL 75753, at *3 (E.D.N.Y. Jan. 6, 2017) (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

## III.    ARGUMENT

As more specifically addressed below, significant portions of Defendant's subpoenas must be quashed, and a protective order issued to prevent discovery into the privileged and private information Defendant seeks to uncover.[3] Defendant's subpoenas seek discovery of information that is protected from disclosure by the government deliberative process privilege, the common interest doctrine, and the Aggrieved Individuals' privacy rights. Its subpoena on the Vermont AG amounts to nothing more than an end-run around the discovery process to try and obtain irrelevant information. And Defendant cannot establish the relevance of its facially

---

[3] The EEOC has standing to move to quash Defendant's third-party subpoenas. A party has standing to object to a third-party subpoena where the party challenging the subpoena has a "personal right or privilege" in the subpoena's subject matter. *Dowling*, 2020 WL 1243780 at *2. As discussed *infra*, the EEOC has claim of government deliberative process privilege and common interest in the documents and communications sought in the Vermont AG subpoena. As for the staffing agency subpoenas, the Aggrieved Individuals have a privacy interest in their employment records. *See id.* ("[C]ourts in th[e Second] Circuit have repeatedly held that the personal rights of a party include privacy interests in documents such as personnel records."). And because the "EEOC stands in the shoes of employees with respect to protecting privacy rights," courts have held that the EEOC has standing to assert the personal and privacy rights of aggrieved employees. *See, e.g.*, *EEOC v. Unit Drilling Co.*, No. 13-CV-147-TCK-PJC, 2014 WL 130551, at *3 (N.D. Okla. Jan. 13, 2014); *EEOC v. Dolgencorp, LLC*, No. CV-21-295-RAW-GLJ, 2023 WL 5583993, at *2 (E.D. Okla. Aug. 30, 2023); *EEOC v. Methodist Hosps. of Dallas*, No. 3:15-CV-3104-G, 2016 WL 10703743, at *2 (N.D. Tex. June 15, 2016); *EEOC v. Original Honeybaked Ham Co. of Georgia, Inc.*, No. 11–cv–02560–MSK–MEH, 2012 WL 934312, *2 (D. Colo. March 19, 2012). In any event, this Court also has the power to quash the subpoenas under its "inherent authority and responsibility to control the scope of discovery." *See Dolgencorp*, 2023 WL 5583993, at *2 ("[T]he Court has the inherent authority to control discovery to determine whether the requested documents should be subject to discovery in this case.").

overbroad subpoenas on Prime Time and Favorite that, at times, seek simply to harass, embarrass, and damage the Aggrieved Individuals.

> **A.    The Court Should Quash Defendant's Request Nos. 1, 2, 4, and 5 to the Vermont AG Because They Seek Privileged, Duplicative, Irrelevant Information.**

Request Numbers 1 and 2 of Defendant's subpoena on the Vermont AG seek "[a]ll communications between [the Vermont AG] and the EEOC concerning the Complaint between January 1, 2020 and June 7, 2022" and "[a]ll communications between [the Vermont AG] and the EEOC concerning" the Aggrieved Parties' charges of discrimination.[4]  *See* Ex. 4 at p. 4.  In Request Numbers 4 and 5, Defendant seeks "all internal [Vermont AG] communications . . . concerning Elderwood" and "all documents in [the Vermont AG's] possession concerning Elderwood."  *See id.*  The Court must quash Defendant's Request Numbers 1 and 2—as well as Request Numbers 4 and 5 to the extent they are duplicative of Request Numbers 1 and 2— because these requests seek the disclosure of confidential information protected by the government deliberative process privilege and the common interest doctrine.  The Court also should quash Request Numbers 1, 2, 4, and 5 in the Vermont AG subpoena because Defendant can establish neither the relevance of the subject matter of the subpoena nor a need for the information.

---

[4] During an October 30, 2023 call between counsel, Defendant agreed to temporally limit Vermont AG Request Numbers 1 and 2 to those communications between January 1, 2020 and June 7, 2022.  Defendant revised Request Number 1 accordingly, but it neglected to add the same temporal limit to Request Number 2.  To the extent the Court declines to quash Request Number 2, the EEOC asks the Court to limit Request Number 2 to communications between January 1, 2020 and June 7, 2022.  Because Defendant agreed to limit Request Number 2 and offers no objection to doing so in its November 27, 2023 letter, the EEOC assumes the failure to limit Request Number 2 was an oversight and that Defendant does not oppose this request.

1.  <u>The Vermont AG Subpoena Seeks to Circumvent the EEOC's Proper Assertions of the Government Deliberative Process Privilege and Common Interest Doctrine.</u>

Defendant's Vermont AG subpoena is not the first time Defendant has attempted to obtain confidential, privileged communications between the EEOC and the Vermont AG.  On March 22, 2023, Defendant made a similar appeal to the EEOC in its First Set of Rule 34 document requests, seeking production of "[a]ll communications between the [EEOC] and [Vermont AG], concerning the allegations in the Complaint."  *See* Ex. 7 at p. 3 (RFP No. 19).  In May 2023, the EEOC produced responsive documents but withheld those that were protected by the government deliberative process privilege and/or required to be kept confidential pursuant to a worksharing agreement between the EEOC and the Vermont AG.  *See* Ex. 8 at pp. 3-5. Specifically, in its privilege log, the EEOC noted it was withholding "[d]ocuments regarding EEOC administrative processing and/or pre-determination analysis of" the underlying charges in this case.  *See* Ex. 9 at p. 3.  To date, Defendant has not disputed the EEOC's claim of privilege over these withheld documents.  Instead, Defendant has turned to the Vermont AG in hopes of obtaining the privileged communications and documents from a third party.  But the communications and documents withheld—and now sought in Request Numbers 1, 2, 4, and 5 in the Vermont AG subpoena—remain protected by the government deliberative process privilege and the common interest doctrine.

The government deliberative process privilege protects from disclosure materials "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *NRDC v. EPA*, 19 F.4th 177, 184 (2d Cir. 2021) (citations omitted).  Specifically, the privilege shields documents that are: "(1) 'predecisional, that is, prepared in order to assist an agency decisionmaker in arriving at his decision'; and (2) 'deliberative, that is, actually related to the process by which policies are

formulated.'" *Knight First Amend. Inst. At Columbia Univ. v. USCIS*, 30 F.4th 318, 334 (2d Cir.

2022) (citation omitted).   Generally, documents created before an agency's final decision on a

matter are predecisional.  *NRDC*, 19 F.4th at 184.  The privilege rests on "the obvious realization

that officials will not communicate candidly among themselves if each remark is a potential item

of discovery and front page news, and its object is to enhance 'the quality of agency decisions,'

by protecting open and frank discussion among those who make them within the Government."

*Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002) (citations omitted).

      Courts regularly prohibit discovery into the sufficiency of charge investigations and

agency communications based on deliberative process privilege.[5]  *See, e.g.*, *EEOC v. Venator*

*Grp.*, No. 99 CIV 4758 AGS, 2000 WL 1059033, at *2 (S.D.N.Y. Mar. 27, 2000) (deliberative

process privilege protects materials relating to EEOC cause determinations); *Baker v. Dupnik*,

No. CV 09-0015-TUC-HCE, 2010 WL 9561922, at *6 (D. Ariz. Jan. 27, 2010) (collecting cases

regarding aspects of states' civil rights agencies and EEOC investigations protected by

deliberative process privilege); *EEOC v. Tex. Hydraulics, Inc.*, 246 F.R.D. 548, 553 (E.D. Tenn.

2007) ("EEOC 'personal notes and evaluations and interagency communications and critiques

. . . fall squarely within the class of material protected by the deliberative process privilege.'"

(citation omitted)).  This Court should as well.  The communications Defendant seeks occurred

as a part of the EEOC's and the Vermont AG's investigations into charges alleging violations of

state and federal discrimination laws.  The communications predate cause determinations and,

---

[5] Admittedly, the deliberative process privilege is qualified and does not protect factual material
from disclosure.  *See EEOC v. Am. Int'l Grp., Inc.*, No. 93 CIV. 6390(PKL)RLE, 1994 WL
376052, at *2 (S.D.N.Y. July 18, 1994); *see also Stinson v. City of New York*, 304 F.R.D. 432,
435-36 (S.D.N.Y. 2015) (discussing qualified nature of privilege).  But the EEOC has already
provided any communications that relate to purely factual matters, rendering any further
discovery to obtain these communications unnecessary.

thus, are predecisional.  And because the communications relate to the charges' handling and the agencies' pre-assessments of the charges, they also are deliberative.

The Vermont AG's involvement in the communications does not destroy the EEOC's claim of government deliberative process privilege because the agencies' communications were in pursuit of a common interest—combatting unlawful employment discrimination. Accordingly, the common interest doctrine preserves the EEOC's privilege.  The common interest doctrine "serves to protect the confidentiality of communications passing" between parties "where a joint [] effort or strategy has been decided upon and undertaken by the parties." *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017) (citation omitted).  The doctrine applies where: (1) one party "shares a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought . . . have been designed to further that interest." *Schultz v. Milhorat*, No. CV 10-103 (AKT), 2011 WL 13305347, at *3 (E.D.N.Y. Apr. 11, 2011).

The EEOC and the Vermont AG undoubtedly share a common legal interest.  Both agencies are tasked with enforcing anti-discrimination laws, and the EEOC is encouraged to enter into worksharing agreements with state fair employment practice agencies, like the one entered into with the Vermont AG here, to promote the "effective enforcement" of anti-discrimination laws.  42 U.S.C. § 2000e-8(b); 18 C.F.R. 1601.13; *EEOC v. Commercial Office Prods. Co.*, 487 U.S. 107, 112 (1988).  These agreements set forth procedures for jointly receiving and taking charges, determining which agency will initially investigate a charge, identifying when the agencies will jointly investigate charges, and explaining what information the agencies will make available to each other to aid in the investigation of charges.  *See, e.g.*, *FY 2022 EEOC/FEPA Model Worksharing Agreement*, EEOC, https://www.eeoc.gov/fy-2022-

eeocfepa-model-worksharing-agreement (last visited Dec. 19, 2023).

The communications the EEOC seeks to protect also were made to further the agencies' joint interest in investigating and stopping unlawful employment discrimination at Elderwood. Pursuant to the worksharing agreement between the agencies, the EEOC and the Vermont AG communicated regarding the Aggrieved Individuals' charges with the expectation that communications would be kept confidential and facilitate the processing and investigating of the charges. As previously mentioned, the two agencies initially investigated the charges jointly, but the Vermont AG later administratively transferred its investigations to the EEOC. *See* Exs. 11 and 12. The EEOC's and Vermont AG's communications concerning the joint investigation and the later transfer of three charges to the EEOC necessarily concern the agencies' common interest in effective enforcement of anti-discrimination laws and vindicating the rights of employees who have been subjected to workplace discrimination.

In short, because the communications between the EEOC and the Vermont AG sought by Defendant are protected by the government deliberative process privilege and the two agencies communicated in furtherance of their shared interest in enforcing anti-discrimination laws, Request Numbers 1, 2, 4, and 5 of the Vermont AG subpoena must be quashed.

2. The Vermont AG Subpoena Also Must Be Quashed Because Request Nos. 1, 2, 4, and 5 Ask for Irrelevant Information That Is Not Necessary to the Case.

Not only are the communications between the Vermont AG and the EEOC privileged, they also are irrelevant and not proportional to the needs of this case. Accordingly, the Court should quash Request Numbers 1 and 2—and Request Numbers 4 and 5 to the extent they seek any documents also covered by Request Numbers 1 and 2—for these reasons as well.

During a conversation with Defendant's counsel, Defendant asserted that it needs the communications requested in Request Numbers 1 and 2 to understand how three of the

Aggrieved Individuals administrative charges were transferred from the Vermont AG to the EEOC for investigation. *See* Ex. 1 at p. 3; Bitterly Decl. at ¶ 3. But Defendant has known of the "not unique," administrative reason for the Vermont AG's transfer of the three charges to the EEOC since *April 26, 2021*: the desire "to avoid even the appearance of conflict" despite the Attorney General's Civil Rights Unit's confidence in its ability to conduct a fair investigation and determination on the charge. *See* Bitterly Decl. at ¶ 3; Exs. 11 and 12 (excerpts of Robinson, Bradstreet, Ndour Administrative Investigations produced to Defendant).

Knowing already the routine, administrative reason for the transfer of the three charges, it is unclear what more Defendant seeks to uncover in its requests for communications between the EEOC and the Vermont AG. Moreover, to the extent Defendant seeks these communications to understand *how* the EEOC conducted its investigation, such details have no relevance to this lawsuit. The present lawsuit is a *de novo* proceeding, and separate from the non-adversarial, non-binding, and non-reviewable EEOC administrative investigation. *See EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 364–65, 370 (4th Cir. 1976) (differentiating the nature of EEOC administrative investigations from EEOC lawsuits). And it is well settled that the adequacy of EEOC investigations and cause determinations are beyond judicial review, including when an employer challenges the EEOC's investigation into class-wide discrimination. *See, e.g.*, *EEOC v. Sterling Jewelers, Inc.*, 801 F.3d 96, 98 (2d Cir. 2015) (judicial review permitted regarding "whether the EEOC conducted an investigation, but not the sufficiency of an investigation."). This Court previously struck Defendant's equitable defenses that took aim at the EEOC's pre-suit administrative process. *See* ECF No. 26-1 at 5-12 (EEOC Motion to Strike); ECF No. 38 (Order granting Motion to Strike). Nevertheless, Defendant persists in trying to uncover evidence regarding the handling of the Aggrieved Individuals' charges. This continued effort is

improper and should be quashed.

      **B.**    **Defendant's Prime Time and Favorite Subpoenas Must Be Quashed, and a Protective Order Issued, Because the Subpoenas Seek Private, Irrelevant Information about the Aggrieved Individuals and Are Facially Overbroad.**

      This Court also must quash numerous requests in Defendant's third-party subpoenas served upon Prime Time and Favorite and limit the scope of discovery into the Aggrieved Individuals' employment records. Its requests seek private information about the Aggrieved Individuals that is neither relevant to the claims and defenses of this lawsuit nor proportional to the needs of the case. In addition, the Court must quash the Prime Time and Favorite subpoenas because numerous requests are facially overbroad. As the requests in the two subpoenas are substantively identical to each other except for the individual identified in the request and the corresponding date ranges, the EEOC will address the requests categorically in turn below.

      1.   <u>Defendant's Requests for the Aggrieved Individuals' Payroll Records Seek Irrelevant Information and Are Overbroad.</u>

      Defendant's subpoenas seek the Aggrieved Individuals' payroll records from one year prior to the Aggrieved Individuals' assignment at Elderwood to one year after. *See* Prime Time Req. Nos. 2, 12, 22, 32; Favorite Req. No. 2. But the Aggrieved Individuals' payroll records relating to assignments before they worked for Elderwood have no relevance because mitigation of damages is not a defense at issue in this case. *See Rollins v. Traylor Bros.*, No. C14-1414-JCC, 2017 WL 1756576, at *4 (W.D. Wash. May 5, 2017) (limiting discovery of plaintiff's payroll records based on plaintiff's stipulation to limit its request for lost wages). The EEOC seeks neither backpay nor front pay, but rather seeks only compensatory and punitive damages. *See* ECF No. 1 at 7-8. As such, Defendant's requests for payroll records before and after working at Elderwood must be quashed.

13

2.  <u>Defendant's Overly Broad Requests for Any Complaint of Racial Harassment or Discrimination by the Aggrieved Individuals and Any Corresponding Investigations Amount to Fishing Expeditions for Irrelevant Information.</u>

Defendant's requests for any complaint of racial harassment or discrimination made by the Aggrieved Individuals and any corresponding investigations seek irrelevant information and are temporally overbroad.  *See* Prime Time Req. Nos. 3, 4, 13, 14, 23, 24, 33, 34; Favorite Req. Nos. 3, 4.  Its requests for complaints and investigations extend beyond the time the Aggrieved Individuals worked at Elderwood, seeking any document for a six-year period from January 1, 2018 to present.  *Id.*

Defendant fails to explain how any complaints and corresponding investigations from the Aggrieved Individuals' time at other facilities are relevant to this case.  In discussions with the EEOC, Defendant asserts that the documents are relevant because "Defendant has reason to believe that one or more of [the Aggrieved Individuals] *may* have manufactured other employment related complaints against other entities, and that this is a pattern."  *See* Ex. 10 at pp. 14-15 (emphasis added).  But Defendant's belief that the Aggrieved Individuals *may* have falsified complaints rests on nothing more than the fact that the Aggrieved Individuals know each other and filed charges of discrimination against Elderwood.  *See* Ex. 3 at p. 5.

Courts hesitate to allow discovery into prior complaints of discrimination and harassment where, as here, the requesting party fails to provide a reasonable basis for the discovery sought.  *See, e.g.*, *Peddy v. L'Oreal USA Inc.*, No. 18 CV 7499, 2019 WL 3926984, at *3 (S.D.N.Y. Aug. 20, 2019) (quashing subpoena for discrimination complaints at prior employer where defendants failed to present "specific, independent evidence that provided a reasonable basis for the third-party discovery sought"); *Bernstein v. Mafcote, Inc.*, No. 3:12CV311 WWE, 2014 WL 3579494, at *5 (D. Conn. July 21, 2014) (rejecting defendant's argument that plaintiff's complaints at prior

job may be relevant to "motive, state of mind, credibility[,] and modus operandi"). Such caution makes sense because without a reasonable basis for the discovery sought, requests for information regarding complaints of harassment or discrimination quickly turn into fishing expeditions that serve no other purpose than to potentially embarrass, damage, or harass the complainant. Because Defendant has no reasonable basis for its request for complaints and investigations and cannot establish relevancy, this Court should quash those portions of the subpoena.

Defendant's assertion that complaints and investigations of racial harassment from the time outside of the Aggrieved Individuals' employment at Elderwood are relevant because "[w]hether or not prior complaints were filed regarding *any* prior or future employer . . . is also relevant to the work environment and experiences that the [Aggrieved] [I]ndividuals have experienced in the industry" fares no better. *See* Ex. 10 at p. 15 (emphasis added). Instead, Defendant's tenuous theory of relevance appears to continue to misunderstand Defendant's liability in the present action. Defendant seems to suggest that it needs information regarding prior employment to determine if the Aggrieved Individuals should be used to, and therefore not offended by, discrimination in the workplace. But whether an individual found different conduct, at a different time, in a different location, at a different employer, by different perpetrators, offensive bears little on whether the Aggrieved Individuals found the environment at Elderwood offensive. Given the number of variables influencing work environments, what a person views as acceptable in a prior workplace says little about what one may find acceptable from another employer. Moreover, the idea that one who experiences harassment on more than one occasion is then used to it and harmed less simply finds no support in the law.

Accordingly, the EEOC requests that the Court quash Defendant's requests concerning

15

complaints and investigations of discrimination and limit discovery regarding complaints and any corresponding investigations to those concerning racial discrimination and racial harassment during the time that the Aggrieved Individuals worked for Defendant.

3. Defendant's Requests for Any Worker's Compensation Claims Arising out of Racial Discrimination by the Aggrieved Individuals Are Overbroad and Seek Irrelevant Information.

Defendant also has failed to appropriately tailor its requests concerning worker's compensation claims filed by the Aggrieved Individuals. The EEOC requested that Defendant narrow its request for any claim of worker's compensation to those that relate to the discrimination *alleged in the Complaint*. *See* Ex. 2 at p. 7. Defendant's revised requests for any "claims arising out of racial discrimination, including racial harassment," still improperly exceed the allegations in this Complaint. *See* Prime Time Req. Nos. 5, 15, 25, 35; Favorite Req. No. 5. Moreover, any worker's compensation claims by the Aggrieved Individuals are irrelevant where, as here, only compensatory and punitive damages are at issue. Because Defendant's requests are overbroad and seek irrelevant worker's compensation claims, this Court must quash these requests and limit discovery to those worker's compensation claims arising out of the discrimination *alleged in the Complaint*, if any.

4. Defendant's Requests for All Disciplinary Documents Relating to Resident Care Issued to the Aggrieved Individuals Are Temporally Overbroad and Seek Irrelevant Information.

In addition, Defendant has not tailored its requests for disciplinary documents concerning the Aggrieved Individuals to the legitimate needs of this case. It has requested all disciplinary documents relating to resident care[6] issued from January 1, 2018 to present, a time period well

---

[6] Defendant's post-conferral subject matter limitation to disciplinary documents relating to "resident care" does not address the temporal overbreadth and irrelevance of its request. Even

beyond the Aggrieved Individuals' employment at Defendant.  *See* Prime Time Req. Nos. 6, 16, 26, 36; Favorite Req. No. 6.  However, none of the Aggrieved Individuals were terminated in this case, and their work performance is not relevant to their hostile work environment claims.

Under these circumstances, courts hesitate to permit broad discovery into aggrieved employees' disciplinary histories.  *See, e.g., Peddy*, 2019 WL 3926984, at *2–3 (quashing subpoena issued to plaintiff's former employers for personnel records, including performance appraisals and disciplinary records, in employment discrimination case because of request's lack of relevance and overbreadth); *Addona v. Parker Hannifin Corp.*, No. 3:13CV1616 RNC, 2014 WL 788946, at *2–3 (D. Conn. Feb. 25, 2014) (similar); *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *3-4 (S.D.N.Y. Jan. 25, 2016) (similar).  This Court should similarly thwart Defendant's request for disciplinary documents issued to the Aggrieved Individuals for the time beyond the Aggrieved Individuals' employment with Elderwood.

5.  <u>Defendant's Requests for All Documents Concerning the Aggrieved Individuals'</u>
     <u>Work Assignments Are Facially Overbroad and Seek Irrelevant Information.</u>

Defendant's requests for *all* documents concerning the Aggrieved Individuals' work assignments from a year prior to a year after their employment at Defendant are facially overbroad, seeking irrelevant information that is not proportional to the needs of the case.  *See* Prime Time Req. Nos. 9, 19, 29, 39; Favorite Req. No. 9.  There is no legitimate reason to command Prime Time and Favorite to produce *every* document they have concerning each Aggrieved Individuals' work assignments during such an expansive time frame because, as

---

assuming the Aggrieved Individuals have raised allegations relating to the scope of resident care at Elderwood, documents relating to the care at other facilities says little about the care provided at Elderwood.

previously noted, back pay and the mitigation of damages are not issues in this case. As such, this Court should limit Defendant's requests to documents sufficient to set forth the Aggrieved Individuals' work assignments from the time of the Aggrieved Individual's placement at Defendant to two months after the Aggrieved Individual's employment at Defendant.

6. <u>Defendant's Requests for All Communications with Aggrieved Individuals Are Facially Overbroad, Lacking Any Tailoring to the Issues of This Case.</u>

Defendant also has requested *all* communications between the two staffing agencies and the Aggrieved Individuals from a year prior to a year after their employment at Defendant. *See* Prime Time Req. Nos. 10, 20, 30, 40; Favorite Req. No. 10. The Court must quash these requests because they are overbroad on their face, seeking communications from time periods not germane to the case and lacking any subject matter limitation. *See, e.g.*, *McKinney v. Granite Peak Fabrication, LLC*, No. 19-CV-266-J, 2021 WL 7252981, at *4 (D. Wyo. Aug. 24, 2021) ("Subpoena requests must be narrowly tailored to the pertinent issues of the case, and requests seeking all communications from [more than a four year period] are burdensome and overbroad."); *Hedgeye Risk Mgmt., LLC v. Dale*, No. 21CV3687ALCRWL, 2023 WL 4353076, at *2 (S.D.N.Y. July 5, 2023) (blanket request seeking "[a]ll communications with and [d]ocuments regarding" an individual overbroad and impermissible).

Defendant has proffered no reason to the EEOC for seeking communications between the Aggrieved Individuals and their staffing agencies beyond those concerning the allegations in the Complaint, nor has it explained what relevance the Aggrieved Individuals' communications with their staffing agencies before their employment with Defendant have to the claims and defenses in this case. Accordingly, this Court must quash Defendant's improperly expansive requests.

7. <u>Defendant's Requests for the Aggrieved Individuals' Personnel Files is Duplicative of Defendant's Other Requests and Must Be Limited.</u>

Lastly, Defendant's requests for the Aggrieved Individuals' personnel files is duplicative of Defendant's requests that seek particular documents likely contained within the personnel files. *See* Prime Time Req. Nos. 1, 11, 21, 31; Favorite Req. No. 1. Therefore, to the extent that Defendant's requests for personnel files seek documents also covered by Defendant's requests objected to above, this Court must likewise quash Defendant's requests for personnel files. Specifically, the EEOC requests that the Court limit these requests to preclude production of the following: (1) any documents relating to the Aggrieved Individuals' payroll records prior to their employment with Elderwood; (2) any complaints of discrimination or harassment and the corresponding investigations not based on racial discrimination or filed outside of the Aggrieved Individuals' employment at Elderwood; (3) any workers' compensation claims filed by the Aggrieved Individuals not arising out of the allegations of discrimination in the Complaint; (4) any disciplinary documents issued to the Aggrieved Individuals' prior to or after their employment at Elderwood; and (5) any documents concerning work assignments beyond those necessary to set forth the Aggrieved Individuals' work assignments for the time period beginning with the respective Aggrieved Individual's placement at Elderwood to two months following the respective Aggrieved Individual's employment at Elderwood. For the reasons discussed above, these five categories of information are not relevant to the claims or defenses and otherwise not proportional to the case.

## IV.    CONCLUSION

For the reasons set forth in detail above, the EEOC requests that this Court: (1) quash Defendant's third-party subpoenas issued to the Vermont AG, Prime Time, and Favorite; and (2) enter a protective order prohibiting discovery into the same. The EEOC also requests that this

19

Court issue an Order staying compliance with the pending subpoenas until it has had the

opportunity to consider this motion.

Dated:  December 19, 2023                    Respectfully submitted,

                                             /s/ Alison Bitterly
                                             ALISON BITTERLY

                                             KATIE N. LINEHAN
                                             ALISON BITTERLY
                                             *Counsel for Plaintiff EEOC*
                                             U.S. EQUAL EMPLOYMENT
                                             OPPORTUNITY COMMISSION
                                             Boston Area Office
                                             John F. Kennedy Federal Building
                                             15 New Sudbury Street, Room 475
                                             Boston, MA 02203
                                             (617) 865-3671
                                             (617) 865-3693
                                             katie.linehan@eeoc.gov
                                             alison.bitterly@eeoc.gov

                                             KIMBERLY A. CRUZ
                                             Assistant Regional Attorney
                                             U.S. EQUAL EMPLOYMENT
                                             OPPORTUNITY COMMISSION
                                             33 Whitehall Street, 5th Floor
                                             New York, NY 10004
                                             (929) 506-5345
                                             kimberly.cruz@eeoc.gov

20

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed through the ECF system on December 19, 2023, and, therefore, will be served electronically by the ECF system upon each party and participant identified on the Notice of Electronic Filing.

 /s/ Alison Bitterly
ALISON BITTERLY