U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 NOV 20 P 4:36

CLERK
BY CMW
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

98 STARR FARM ROAD OPERATING CO., LLC D/B/A ELDERWOOD AT BURLINGTON AND ELDERWOOD ADMINISTRATIVE SERVICES, LLC,

Defendants.

Civ. Action No. 2:22-cv-00168-cr

**CONSENT DECREE**

Plaintiff United States Equal Employment Opportunity Commission ("EEOC") filed this action, alleging that Defendant 98 Starr Farm Road Operating Co., LLC d/b/a Elderwood at Burlington and Elderwood Administrative Services, LLC, as defined below, violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to provide appropriate relief to individuals harmed by such practices. Specifically, the EEOC alleged that Defendants discriminated against Londia Bradstreet, Nicole Ferguson, Felicia Ivy, Dian Murphy, Papa Ndour, and Faith Robinson (collectively, "Aggrieved Individuals") at Defendant Elderwood's Burlington, Vermont location by subjecting them to a hostile work environment based on race. Defendants deny these allegations and make no admission of liability herein.

The EEOC and Defendants (collectively, the "Parties") have agreed that this action should be resolved by entry of this Consent Decree ("Decree"). The Parties, therefore, hereby stipulate and consent to the entry of this Decree as final and binding on the Parties, including Defendants and any other entity with which Defendants may merge or consolidate. The Parties have agreed

that this Decree may be entered into without findings of fact and conclusions of law having been made or entered by the Court.

In consideration of the mutual promises and agreements contained in this Decree, the sufficiency of which is hereby acknowledged, the Parties agree as follows, this Court finds appropriate, and it is therefore ORDERED, ADJUDGED, AND DECREED that:

## I. GENERAL PROVISIONS

1. This Decree is final and binding on the Parties and resolves the claims alleged in the EEOC's Amended Complaint in this case, which arose from EEOC Charge Nos. 523-2020-01957, 523-2021-00225, 523-2021-00400, 16K-2021-00040, 16K-2021-00031, and 16K-2021-00033. This Decree does not resolve any other charge of discrimination pending before the EEOC or any charge that may be filed in the future.

2. The Parties agree and the Court finds that this Court has jurisdiction over the subject matter of this action and the Parties, that venue is proper, and that all administrative prerequisites have been met.

3. By mutual consent of the Parties, this Decree may be amended in the interests of justice and fairness, and to facilitate execution of this Decree's provisions. No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing, approved by all the Parties to this Decree, and approved or ordered by the Court.

4. No party shall contest the Court's jurisdiction to enforce this Decree and its terms or the right of the EEOC to bring an enforcement action upon breach of any term of this Decree in any federal court with jurisdiction. Breach of any term of this Decree shall be deemed to be a material, substantive breach of this Decree. The Court will retain jurisdiction over any such enforcement proceeding initiated during the duration of this Decree. Nothing in this Decree will be construed to preclude the EEOC from bringing proceedings to enforce this Decree in the event

that Defendants fail to perform any of the promises or representations herein. This Decree will be construed by this Court under applicable federal law.

5. If one or more provisions of this Decree are rendered unlawful or unenforceable as a result of a legislative act or a decision by a court of competent jurisdiction, the following will apply to ensure that this Decree continues to effectuate the intent of the Parties: the provisions of this Decree that are not rendered unlawful, unenforceable, or incapable of performance as a result of such legislative act or court decision will remain in full force and effect and the Parties' responsibilities will not abate as to any and all provisions that have not been rendered unlawful or unenforceable, except to the extent that the intent of this Decree would be undermined.

6. The terms of this Decree represent the full, complete and voluntary agreement of the Parties.

7. Nothing in this Decree shall be construed to require Defendants to take, or to refrain from taking, any action with respect to any Resident that would violate 42 U.S.C. § 1395i-3, 42 U.S.C. § 1396r, 42 C.F.R. Part 483, or applicable Vermont law governing resident rights, including without limitation the limitations on transfer and discharge in 42 C.F.R. § 483.15(c) and the prohibitions on physical and chemical restraints (collectively, "CMS Requirements"). Defendants shall take only such remedial or corrective actions with respect to Residents, and Residents' family members and visitors, as are permitted by and consistent with CMS Requirements.

## II. DEFINITIONS

8. "Defendant Elderwood" means Defendant 98 Starr Farm Road Operating Co., LLC d/b/a Elderwood at Burlington, its officers, managers, successors, assigns, full or partial purchasers, subsidiaries, and any other corporation or other entity into which Defendant 98 Starr Farm Road Operating Co., LLC d/b/a Elderwood at Burlington may merge or consolidate.

9. "Defendant EAS" means Defendant Elderwood Administrative Services, LLC, its officers, managers, successors, assigns, full or partial purchasers, subsidiaries and any other corporation or other entity into which Defendant Elderwood Administrative Services, LLC, may merge or consolidate.

10. "Defendants" means Defendant Elderwood and Defendant EAS, collectively, each being jointly and severally liable for the obligations attributed to Defendants herein.

11. "Day" or "days" mean calendar days and include weekends and holidays, except where otherwise noted herein.

12. "Effective Date" means the date this Decree is executed by the Court and entered onto the docket.

13. "Employee(s)" means any individual employed directly by Defendant Elderwood or through a third party, such as a staffing agency and/or individuals employed by Defendant EAS.

14. "Resident(s)" means any individual for whom Defendant Elderwood provides long-term care and/or short-term rehabilitation services, including, but not limited to, skilled nursing, respite care, cardiac rehabilitation, orthopedic rehabilitation, physical therapy, long-term care therapy, memory care, and/or palliative care services. Defendant EAS does not and is not licensed to provide direct care services to residents.

## III. APPLICABILITY OF DECREE

15. The terms of this Decree are and shall be binding on the present and future owners, directors, officers, managers, agents, successors, and assigns of any Defendant; provided that any third party lender that is not affiliated with Defendants will not be deemed to be an owner, director, officer, manager, agent, successor or assign in any foreclosure or similar action against any Defendant. At least sixty (60) days prior to any sale or other transfer of any Defendant's business, or sale or other transfer of all or a substantial portion of any Defendant's assets, the Defendant

shall provide a copy of this Decree to any potential purchaser, potential transferee, or other potential successor.

16. Notwithstanding the provisions of Paragraph 15, in the event of a sale of the facility at 98 Starr Farm Road, Burlington, Vermont, 05408 (the "Burlington Facility") to a Third-Party Purchaser, the Third-Party Purchaser shall not be bound to the terms of this Decree. A "Third-Party Purchaser" is defined as an entity which: i) is not affiliated with either Defendant; ii) has no affiliation with Defendants' past or present owners; iii) is not a direct or indirect subsidiary of Post Acute Partners, LLC; iv) will not receive services from Defendant EAS; and v) will continue to satisfy the foregoing conditions i-iv throughout the term of this Decree. At least thirty (30) days prior to the sale of the Burlington Facility to a Third-Party Purchaser, Defendants shall provide the EEOC with signed affidavits from Dr. Jeffrey Rubin, Warren Cole, and Defendant EAS's Chief Operating Officer stating that Defendants have no affiliation with the Third-Party Purchaser, that Defendants' past and present owners have no affiliation with the Third-Party Purchaser, that the Third-Party Purchaser is not a direct or indirect subsidiary of Post Acute Partners, LLC, that Defendant EAS will not provide any services to the Third-Party Purchaser, and that the Third-Party Purchaser will continue to satisfy these conditions throughout the term of this Decree.

## IV. DURATION AND EXECUTION

17. The duration of the Decree shall be a period of two years and six months (2.5 years) immediately following the Court's execution of this Decree.

18. If the EEOC notifies Defendants in writing not less than thirty (30) days before the expiration of this Decree that Defendants are not in compliance with any of the terms of this Decree, Defendants' obligations under this Decree will not expire while any enforcement action concerning the Decree is pending.

19. The Court retains jurisdiction over this action during the duration of this Decree and will have all available powers to enforce this Decree, including, but not limited to, monetary sanctions and injunctive relief. The matter may be administratively closed but will not be dismissed during the duration of this Decree.

## V. INJUNCTIVE RELIEF

20. Defendants are enjoined, for the term of this Decree, from creating, maintaining, encouraging, condoning, and/or failing to take prompt and appropriate corrective action to remedy harassment because of race, in violation of Title VII, at Defendant Elderwood's Burlington, Vermont facility.

## VI. MONETARY RELIEF

21. Defendants shall pay the total amount of $450,000.00 ("Settlement Funds") in accordance with the terms of this Decree.

22. Defendants will not condition the receipt of individual relief upon any of the Aggrieved Individuals' agreement to maintain as confidential the terms of this Decree or the facts of the case.

23. To resolve the claims alleged, Defendants shall pay a total of $450,000.00 in damages to the Aggrieved Individuals. These damages are to be apportioned among the Aggrieved Individuals in amounts to be determined by the EEOC in its sole discretion.

24. Defendants shall be responsible for and pay all costs relating to distribution of the Settlement Funds to the Aggrieved Individuals and acknowledge that the Settlement Funds are a debt owed to the United States.

25. If Defendants fail to tender the payments described in the paragraphs immediately above, Defendants will pay interest on the defaulted payment(s) at the rate calculated pursuant to

26 U.S.C. § 6621(b) until the same is paid, and bear any additional costs incurred by Defendants' non-compliance or delay.

26. The payments required under this Decree shall be hand-delivered or mailed, via certified, trackable mail, no later than fourteen (14) calendar days from the date Defendants receive notice from the EEOC regarding the apportionment of the Settlement Funds for each Aggrieved Individual and address information. Upon delivery or mailing of these payments, Defendants will also simultaneously send verification of payment, in the form of copies of checks issued and the tracking information corresponding to each payment, to the EEOC via email pursuant to Paragraph 49(A) below.

## VII. POSTINGS AND NOTICES

27. Within seven (7) days of the Effective Date of this Decree, Defendant Elderwood shall post eleven (11) inches by fourteen (14) inches laminated copies of the EEOC's most recent "Equal Employment Opportunity is the Law" poster ("Poster") in conspicuous place(s) frequented by employees, including on all employee bulletin boards and all other places where employee notices are posted within Defendant Elderwood's Burlington facility. If a Poster becomes defaced or illegible, Defendant Elderwood will replace it with a clean copy.

28. Within seven (7) days of the Effective Date of this Decree, Defendant Elderwood shall post eleven (11) inches by fourteen (14) inches laminated copies of the Notice of Lawsuit and Settlement ("Notice"), attached as **Exhibit A** to this Decree, in conspicuous place(s) frequented by employees, including on all employee bulletin boards and all other places where employee notices are posted within Defendant Elderwood's Burlington facility. If a Notice becomes defaced or illegible, Defendant Elderwood will replace it with a clean copy. Defendant Elderwood shall certify to the EEOC, in writing, no later than ten (10) days after the Effective Date

of this Decree, that the Notice has been properly posted, including identifying the locations where the Notices have been posted.

## VIII. INDEPENDENT EEO COMPLAINT HOTLINE

29. Defendant Elderwood and/or Defendant EAS shall maintain a toll-free hotline for its employees to report discrimination, harassment, or retaliation (the "Hotline") and shall, within thirty (30) days of the Effective Date, certify that its current third-party Hotline meets the requirements set forth in Paragraph 30 below.

30. The Hotline shall have the authority and obligation to:

A. Provide a dedicated, toll-free EEO telephone hotline for Defendant Elderwood's employees to report discrimination, harassment, or retaliation;

B. Allow complainants to identify themselves or to submit complaints anonymously;

C. Be available to accept complaints 24 hours per day, 7 days per week, 365 days per year;

D. Maintain detailed written records of all reports and complaints; and

E. Forward copies of the written records of all reports and complaints as soon as practicable, but in all circumstances within three (3) business days of the complaint or report to Defendant Elderwood's Administrator, Director of Nursing, and senior human resources personnel.

31. A breach of the aforementioned obligations of the Hotline will constitute a breach by Defendant Elderwood of the terms of this Decree.

32. All costs incurred for the Hotline services will be paid by Defendant Elderwood or Defendant EAS.

33. Defendant Elderwood will maintain notice postings advertising the Hotline in a conspicuous place(s) frequented by employees, including the Hotline phone number, and a statement that:

A. Complaints can be made anonymously;

B. The Hotline is toll-free; and

C. The Hotline is available 24 hours a day, 7 days a week, 365 days a year.

## IX. ANTI-DISCRIMINATION POLICIES AND PROCEDURES

34. **Revised Anti-Discrimination Policy.** Within thirty (30) days of the Effective Date, Defendant Elderwood shall issue a revised policy applicable to all individuals that work at Defendant Elderwood's Burlington facility that explains, defines, and prohibits discrimination in the terms and conditions of employment including, but not limited to, hiring, firing, and promoting employees; harassment on the basis of race or any other protected status; and retaliation ("Anti-Discrimination Policy"). This policy shall be drafted in plain and simple language. The Anti-Discrimination Policy must include the following minimum criteria:

A. A statement encouraging employees to ask questions, share concerns, provide information about potential discrimination, harassment, and/or retaliation to Defendant Elderwood—such as formally or informally sharing information with the Human Resources Department and/or Defendant Elderwood's Administrator—and participate candidly in investigations of complaints of discrimination, harassment, or retaliation;

B. A prohibition against discrimination against employees on the basis of race by employees and non-employees who interact with employees, such as residents and/or residents' family members or visitors;

C. A prohibition against any act, policy, or practice that has the effect of creating, facilitating, or permitting the existence of a work environment that is hostile to employees based on race through acts such as, but not limited to, physical or verbal abuse or derogatory comments;

D. A definition and examples of racial harassment that can occur in the workplace, including the racial harassment of an employee by a resident;

E. A prohibition against retaliation against employees for opposing employment practices they believe are discriminatory or for participating in any investigation, whether internal or external, of complaints of discrimination, including racial harassment;

F. A definition of retaliation, with examples;

G. A complaint procedure designed to encourage employees to come forward with complaints regarding violations of Defendant Elderwood's Anti-Discrimination Policy, which shall meet the following minimum criteria:

  i. Provides clear, multiple effective mechanisms and steps for reporting incidents of discrimination, harassment, and retaliation, including, but not limited to, notifying any supervisor, manager, or Human Resources representative; information about the Hotline detailed in Section VIII; and information about and necessary to make a complaint—at any time—to the EEOC and the Vermont Attorney General's Office;

  ii. Encourages prompt reporting;

iii. Provides that complaints of discrimination, harassment, or retaliation can be made either in writing or orally;

iv. Includes a complaint form which an employee may, but is not required, to use;

v. Identifies, by name and title, employees to whom a complaint can be made and provides their contact information;

vi. States that making complaints to the person who is allegedly perpetrating the discrimination, harassment, or retaliation is not required under any circumstances;

vii. Provides assurance that complainants or witnesses who provide testimony or assistance in the investigation of a discrimination complaint shall not be subjected to retaliation;

viii. States that all complaints will be investigated and taken seriously, regardless of whether the alleged discriminator is an employee or non-employee;

ix. States that complaints will be kept confidential to the extent practicable under the circumstances;

x. States that any non-anonymous complaining party will be promptly informed once an investigation of discrimination, harassment, or retaliation has been completed and the outcome of that investigation, including any remedial actions taken; and

xi. Requires that complaints of discriminatory harassment of employees by residents or other third parties, and investigative

materials in connection with those complaints (including documents or electronically stored information, affidavits, witness statements, interview notes, summaries, text messages, and emails) are retained by Human Resources for a period of five (5) years following the submission of the charge, complaint, or report. "Complaints" as used in this paragraph, includes any complaint made through the above-referenced hotline, any complaint made to any manager of Defendant Elderwood, and any complaint of which a manager of Defendant Elderwood becomes aware.

H. A provision requiring the prompt and impartial investigation of complaints of discrimination, harassment, and retaliation by a neutral investigator specifically trained in receiving, processing, and investigating allegations of race discrimination, including harassment, and retaliation;

I. A requirement that upon the report of any alleged discriminatory actions by a resident, Defendant Elderwood's Administrator and/or designee will be immediately notified and, thereafter, will immediately notify Defendant EAS's Director of Human Resources, who will be directly involved in the investigation and will be directly involved in the resolution of the complaint of discrimination, and will involve Defendant EAS's Chief Nursing Officer, as appropriate based on the resident's condition, including in connection with any development and implementation of revised care plans and follow-up with staff, resident family members, and other relevant stakeholders;

J. An assurance that appropriate corrective action will be taken by Defendant Elderwood for violations of Defendant Elderwood's Anti-Discrimination Policy;

K. A description of corrective actions that could be taken by Defendant Elderwood for violations of Defendant Elderwood's Anti-Discrimination Policy, including specific disciplinary actions up to and including termination of employment, or steps to terminate residency or restrict a third party's access to Elderwood, that do not violate CMS regulations; and

L. States that all supervisors and managers, of whatever rank, have a duty to document—in written form—and to report, as soon as practicable but in all circumstances within three (3) business days, any and all observations or complaints of potential or alleged discrimination, harassment, or retaliation directly to designated human resources personnel, and that failure to carry out this duty is grounds for disciplinary action, up to and including immediate discharge.

35. Within thirty (30) days of the Effective Date, Defendant Elderwood shall distribute copies of the Anti-Discrimination Policy to all of its employees by either direct distribution by hand or mail, to the employee's address of record, or by email to the employee's personal email. Employees shall be advised that they are permitted to keep this policy and take it home with them for their own records. Defendant Elderwood shall distribute this policy (by the aforementioned means) to each subsequently hired temporary, seasonal, or permanent employee at the time of hire and shall be advised that they are permitted to keep this policy and take it home with them for their own records.

36. **Resident Code of Conduct.** Within thirty (30) days of the Effective Date, Defendant Elderwood, with input from Defendant Elderwood's Administrator, shall institute a policy for all its residents and residents' family members and/or visitors that states Defendant Elderwood prohibits discrimination and harassment made unlawful under Title VII, including in interactions with employees and non-employees ("Resident's Code of Conduct"). Upon Defendant Elderwood's admission of a resident, Defendant Elderwood shall provide every resident and their designated responsible party (if any) with a hard copy of the Resident's Code of Conduct, and provide verbal instruction on the same. The Resident's Code of Conduct must include the following minimum criteria:

A. States that Defendant Elderwood prohibits and will not tolerate discrimination, including harassment of Defendant Elderwood's employees;

B. States that Defendant Elderwood will not accommodate resident requests to only be cared for by persons of a particular race or to not be cared for by persons of a particular race, however, this does not preclude entries into a resident's care plan that note behaviors of residents toward others, but under no circumstances shall state a resident's racial preference for caregivers;

C. States that Defendant Elderwood will document and investigate any complaints of discrimination, including harassment, involving a resident and an employee or resident's visitor and an employee;

D. States that, if a complaint of discrimination involving a resident and an employee or a resident's visitor and an employee is substantiated, Defendant Elderwood will inform the resident and/or resident's visitor and

may take appropriate action, only to the extent such action is permitted by and consistent with CMS Regulations and Requirements and Vermont law, that could include:

i. Defendant Elderwood reviewing the Resident's Code of Conduct with the resident (to the extent clinically appropriate given the resident's cognitive status) and/or resident's designated responsible party (if any);

ii. Defendant Elderwood attempting to reform the behavior of resident's visitors and residents, including by, where appropriate based on the resident's clinical condition, implementing person-centered, interdisciplinary care-plan interventions designed to reduce the recurrence of the conduct;

iii. Defendant Elderwood seeking support and input from the resident's designated responsible party (if any) on effective techniques to address the resident's behavior;

iv. Defendant Elderwood consulting with Defendant Elderwood's Administrator and/or Director of Nursing to develop and implement appropriate corrective action and/or care plans;

v. Defendant Elderwood banning a resident's visitor from, or restricting a resident's visitor's access to the Elderwood at Burlington facility and/or to Defendant Elderwood's employees; and

vi. Defendant Elderwood transferring or discharging a resident.

## X. ANNUAL EXECUTIVE MESSAGE

37. Within sixty (60) days of the execution of this Decree, and annually thereafter, Defendant Elderwood shall deliver, via email, an executive message to all employees from the Defendant Elderwood Administrator, which:

A. Emphasizes Defendant Elderwood's commitment to ensure a safe, harassment-free workplace;

B. Underscores Defendant Elderwood's commitment to its policies prohibiting discrimination, harassment, and retaliation in the workplace, regardless of whether the alleged discriminator is an employee or non-employee, such as a resident or resident's family member/visitor; and

C. Encourages reporting, including bystander reporting, of any violations of Defendant Elderwood's Anti-Discrimination Policy.

## XI. TRAINING

38. All trainings described below are mandatory for the duration of the Decree.

39. All trainings described below shall be provided by a neutral, third-party trainer—either individual or entity—that has subject-matter expertise in providing training on equal employment opportunity law and investigations concerning the same ("Trainer").

40. Defendants shall document employee attendance at all trainings by having employees verify their attendance in writing, including date of attendance. Defendants shall maintain copies of these attendance-verification documents for the duration of the Decree.

41. At least twenty (20) days prior to any scheduled training, Defendants shall provide the EEOC with the identity and qualifications of the Trainer, a description of the trainings to be provided along with the training materials, and an outline of the training curriculum. The EEOC will inform Defendants at least ten (10) days prior to the scheduled training if it has an objection

to the Trainer's or training materials' compliance with this Decree. The EEOC's consent to the Trainer shall not be unreasonably withheld.

42. Within forty-five (45) days of the Effective Date and annually thereafter, Defendants shall provide live, web-based interactive training to all their employees. Such training shall be no less than one (1) hour in duration. The training shall include:

A. Defendant Elderwood's Annual Executive Message as described in Section X;

B. A definition of race discrimination, including racial harassment, a statement that it is against the law, and examples that include racial harassment of Defendants' employees by a resident;

C. The types of conduct that are not acceptable in the workplace, including conduct that, if left unaddressed, may rise to the level of unlawful racial harassment (including realistic hypotheticals to Defendants' workplaces and/or industry and include racial harassment by an employee and non-employee);

D. Employees' rights and responsibilities if they experience or witness unacceptable conduct at work, including the ways in which they can report harassment pursuant to Defendants' Anti-Discrimination Policies;

E. Encouragement of bystander reporting, that is, it will convey that all individuals in the workplace are encouraged (and, for supervisors and managers, required) to take action if they observe any problematic behavior, and it will explain how they can do so;

F. A definition of retaliation and statement that it is against the law;

G. The types of conduct that may constitute retaliation;

H. The consequences for engaging in retaliatory conduct;

I. Employees' right to be free from retaliation and responsibility to refrain from conduct that may constitute retaliation;

J. An explanation of Defendants' Anti-Discrimination Policies and complaint processes, including, but not limited to, information about:

  i. Defendants' Hotline;

  ii. How complaints can be made to any supervisor, manager, or Human Resources representative;

  iii. How complaints can be made anonymously;

  iv. How complaints can be made orally or in writing;

  v. How complaints will be kept confidential to the extent practicable under the circumstances;

  vi. How an investigation will take place;

  vii. A complaining person's receipt of timely notice of the investigation's outcome and any remedial actions taken; and

  viii. How any complaining person or person who provides information as part of any investigation will not be subject to retaliation;

K. Identification of federal, state, and local agencies responsible for enforcing anti-discrimination laws, a statement that employees can also make complaints to these agencies at any time, and contact information for each agency; and

L. Provide for interactive training, providing participants opportunities both to answer and ask questions about how to recognize and respond to potentially discriminatory behavior in the workplace.

43. Defendants shall provide a recorded version of this training to all new workers within ten (10) days of their hire.

44. Within forty-five (45) days of the Effective Date and annually thereafter, Defendants shall provide live, web-based interactive training to all their supervisors and managers, whatever rank, that is in addition to the training described in Paragraph 42. Such training shall be no less than one (1) hour in duration and be provided by the Trainer. The training shall address:

A. The effect of racial harassment on employees and the ways in which it affects performance and mental health;

B. Applicable laws prohibiting discrimination, retaliation, and harassment, including Title VII;

C. Management's role in preventing racial harassment and stopping it if it occurs, including by engaging in bystander intervention and documenting discrimination complaints;

D. The Resident's Code of Conduct and management's role in enforcing the same;

E. Hypotheticals where managers are required to intervene when they witness racial harassment, using realistic hypotheticals based on Defendants' workplaces and/or industry and include racial harassment by an employee and non-employee;

F. Information on recognizing complaints of racial harassment, using realistic hypotheticals based on Defendants' workplaces and/or industry and including racial harassment by residents;

G. How to receive complaints of racial discrimination, including harassment, and retaliation;

H. How to report complaints of race discrimination, including harassment, to Defendant Elderwood's Administrator, who in turn will report these complaints to Defendant EAS's Director of Human Resources pursuant to Defendants' Anti-Discrimination Policies;

I. The duty and responsibility of all managers to document—in written form—and report, within twenty-four (24) hours, any complaints of racial harassment, discrimination, or retaliation (including so-called "informal" complaints), and the penalties for failing to do so;

J. Information on recognizing retaliation, using realistic hypotheticals based on Defendants' workplaces and/or industry; and

K. Management's role in preventing retaliation and stopping it if it occurs.

45. Defendants will provide a recorded version of this training to all new managers and supervisors within ten (10) days of hire.

## XII. RECORDKEEPING AND REPORTING

46. The EEOC may review Defendants' compliance with the provisions of this Decree. As part of its review, and with reasonable notice of five (5) days, the EEOC may inspect Defendant Elderwood's Burlington facility, interview employees, and examine and copy documents. Defendant Elderwood will make all employees available to the EEOC and shall permit employees to speak confidentially with the EEOC for the purpose of verifying compliance with this Decree.

47. For the duration of this Decree, Defendants must create and maintain such records as are necessary to demonstrate their compliance with this Decree and with 29 C.F.R. § 1602 *et seq*.

48. Defendants shall submit to the EEOC five Biannual Reports, due six months after the Effective Date of the Decree, twelve months after the Effective Date of the Decree, eighteen months after the Effective Date of the Decree, twenty-four months after the Effective Date of the Decree, and twenty-seven months after the Effective Date of the Decree. Each Biannual Report shall be signed by the Defendant Elderwood Administrator and Defendant EAS's Director of Human Resources under the penalties of perjury as set forth in 28 U.S.C. § 1746. The Biannual Report shall certify compliance with this Decree and contain:

A. A certification of compliance with the Notice and Posting requirements described in Section VII, with a photograph of the posted materials in Defendant Elderwood's Burlington facility;

B. A certification of compliance with the Anti-Discrimination Policy distribution requirement described in Paragraph 35 in the prior six (6) months;

C. A certification of compliance with the Resident's Code of Conduct distribution requirement described in Paragraph 36;

D. A current copy of the Anti-Discrimination Policy, the Resident's Code of Conduct, and policy regarding the documentation of complaints and investigations described in Paragraph 34(G)(xi);

E. A list of all management or supervisory personnel with responsibility for enforcing the Anti-Discrimination Policy and working at Defendant Elderwood's Burlington facility, including name, title, and date of hire;

F. A list of all management or supervisory personnel with responsibility for enforcing the Resident's Code of Conduct and working at Defendant Elderwood's Burlington facility, including name, title, and date of hire;

G. Where conducted in the prior six (6) months, a summary of all trainings provided pursuant to Section XI, including:

i. A certification that such training was provided;

ii. The date and location of each training;

iii. A statement indicating the manner of training, the length of the training, and the names and positions of all attendees; and

iv. Copies of all handouts, PowerPoint or similar presentations, and any outlines utilized by presenters during the trainings;

H. A summary of all charges or complaints of race discrimination received by Defendant Elderwood or Defendant EAS regarding Defendant Elderwood through Defendants' complaint reporting process detailed in Defendants' Anti-Discrimination Policies or received by Defendants from a law enforcement agency in the prior six (6) months; and

I. The complete investigative materials, as described in Paragraph 34(G)(xi) above, for all investigations concluded relating to the prior Paragraph 48(H) in the prior six (6) months.

## XIII. DECREE COMMUNICATIONS

49. Except as otherwise provided for in this Decree, all notifications, reports, or other communications to the Parties pursuant to this Decree shall be made in writing and sufficient as emailed (or, with advance written permission, mailed) to the following persons (or their designated successors):

A. For the EEOC:

**Consent Decree Monitor**
EEOC Legal Unit
33 Whitehall Street, 5th Floor
New York, NY 10004
Decreemonitor.nydo@eeoc.gov

**Katie N. Linehan**
Trial Attorney
Boston Area Office
John F. Kennedy Federal Building
15 New Sudbury Street, Room 475
Boston, MA 02203
katie.linehan@eeoc.gov

B. For Defendants:

**Julia McMillen**
General Counsel
Post Acute Partners
641 Lexington Avenue,
18th Floor
New York, NY 10022
C: (917) 822-0106
jmcmillen@postacute.com

**Richard S. Basile**
Deputy General Counsel
Post Acute Partners
641 Lexington Avenue, 18th Floor
New York, NY 10022
C: (646) 438-1777
rbasile@postacute.com

Notwithstanding this paragraph, either party may change such addresses or identify a different designee by written notice to the other party setting forth a new address for this purpose or identifying a different designee without Order of the Court or approval of the other party.

## XIV. DISPUTE RESOLUTION

50. In the event that the EEOC believes that Defendants have failed to comply with any provision(s) of the Decree, except Paragraph 23, the EEOC will notify Defendants, and they must make a good faith attempt to cure any breach of the Decree within fifteen (15) days of notification.

51. Following the fifteen (15) days to cure period, if the EEOC still believes that Defendants have failed to comply with the provision(s) of the Decree identified, the EEOC shall have the right to seek Court intervention.

52. Upon motion of the EEOC, this Court may schedule a hearing for the purpose of reviewing compliance with this Consent Decree.

53. Any failure by Defendants to comply with Paragraphs 21 and 23 will not be subject to the fifteen (15) day cure period in Paragraphs 50–51.

## XV. COSTS

54. Each party to this Decree shall bear its own attorneys' fees and costs associated with this litigation.

## XVI. THE EEOC'S REPORTING REQUIREMENTS UNDER IRC SECTIONS 162(f) AND 6050X

55. The EEOC may be required to report the fact of this settlement to the Internal Revenue Service ("IRS") under Section 162(f) and 6050X of the Internal Revenue Code ("IRC"), which allow for certain payments by employers to be deducted from the employer's taxes. If the EEOC is required to do so, the EEOC will provide the employer with a copy of the 1098-F form that it will provide to the IRS.

56. Defendant Elderwood's EIN is 83-1482410 and Defendant EAS's EIN is 90-0899191. The individual to whom the EEOC should mail a copy of the 1098-F form, if the EEOC is required to issue one, is:

For Defendant Elderwood:

Pam Rafferty
Acting Administrator, Elderwood at Burlington
98 Starr Farm Road Operating Company LLC
d/b/a Elderwood at Burlington
98 Starr Farm Road
Burlington, VT 05408

For Defendant EAS:

Paul Vinkle, CFO
Elderwood Administrative Services, LLC
500 Seneca Street
Buffalo, NY 14204

Notwithstanding this paragraph, Defendants may change such addresses or identify a different designee by written notice to the EEOC setting forth a new address for this purpose or identifying a different designee without Order of the Court or approval of the other party.

57. The EEOC has made no representations regarding whether the amount paid pursuant to this settlement qualifies for the deduction under the IRC.

58. The provision of the 1098-F form by the EEOC does not mean that the requirements to claim a deduction under the IRC have been met.

59. Any decision about a deduction pursuant to the IRC will be made solely by the IRS with no input from the EEOC.

60. The Parties are not acting in reliance on any representations made by the EEOC regarding whether the amounts paid pursuant to this agreement qualify for a deduction under the IRC.

**XVII. NOTIFICATION OF SUCCESSORS**

61. Defendants shall provide prior written notice to any potential purchaser of their business or a purchaser of all or a substantial portion of Defendants' assets, and to any other potential successor, of the EEOC's lawsuit, the allegations raised in the EEOC's Amended Complaint, and the existence and contents of this Decree. Defendants will provide written notice to the EEOC twenty-one (21) days before any transfer of its business.

**XVIII. EXECUTION**

62. Defendants will not attempt to condition the receipt of individual relief upon an individual's agreement to: (a) maintain as confidential the terms of this Consent Decree; or (b) waive his or her statutory right to file a charge with any federal or state anti-discrimination agency.

Dated: 11/19/26

FOR PLAINTIFF
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

CHRISTOPHER LAGE
Acting General Counsel
Associate General Counsel 131 M. Street, N.E.
Washington, D.C. 20507

KIMBERLY A. CRUZ
Regional Attorney

KATIE N. LINEHAN
Trial Attorney
Boston Area Office
John F. Kennedy Federal Building
15 New Sudbury Street, Room 475
Boston, MA 02203
(617) 865-3671
katie.linehan@eeoc.gov

CAITLIN D. BROWN
Trial Attorney
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
(929) 506-5277
caitlin.brown@eeoc.gov

Dated: 11/19/26

FOR DEFENDANT 98 STARR FARM ROAD OPERATING CO., LLC D/B/A ELDERWOOD AT BURLINGTON

Pam Rafferty
Acting Administrator
98 Starr Farm Road Operating Co., LLC d/b/a
Elderwood at Burlington

Dated: 11/19/26

FOR DEFENDANT ELDERWOOD ADMINISTRATIVE SERVICES, LLC

Philip Quillard
Chief Operating Officer
Elderwood Administrative Services, LLC

*As to form*:

/s/ Pietro J. Lynn

PIETRO J. LYNN
Lynn, Lynn, Blackman & Manitsky, P.C.
*Counsel for Defendants*
76 St. Paul Street, Suite 400
Burlington, VT 05401
(802) 860-1500
plynn@lynnlawvt.com

*As to form*:

/s/ Caroline J. Berdzik

CAROLINE J. BERDZIK
Goldberg Segalla LLP
*Counsel for Defendants*
301 Carnegie Center Drive, Suite 200
Princeton, NJ 08540
(609) 986-1301
cberdzik@goldbergsegalla.com

CHRISTOPHER P. MAUGANS
Goldberg Segalla LLP
*Counsel for Defendants*
665 Main Street
Buffalo, NY 14203
(716) 710-5825
cmaugans@goldbergsegalla.com

**SO ORDERED, ADJUDGED, AND DECREED.**

Dated: 11/20/26

Hon. Christina Reiss
United States District Court Judge

JUDGMENT ENTERED ON DOCKET
DATE: 11/20/2026